Unlawful breaking and entering of a vehicle; fifteen years.
On the night of August 20, 1980, Faye Wright was driving south on Highway 31 in Hartselle when she ran out of gas. She parked her 1974 Pontiac Grand Prix on the side of the highway, locked it, and walked home. This occurred around 10:30 P.M. When she next saw her car the radio and tape deck had been removed, the shelf under the rear window had large holes in it and the speakers had been partially removed, the chrome around one of the rear windows was missing, and there was other damage to the interior of the car.
Hartselle Police Officer Mac Hazel passed Wright's Grand Prix three times during his regular patrol in the early morning hours of August 21, 1980. He passed the car for the third time at approximately 4:00 or 4:30 A.M. The interior light of the Grand Prix was on and Hazel could see one person inside the car and another person outside. Hazel identified the appellant as the person inside the Grand Prix. A Ford was parked behind the Grand Prix and Hazel pulled in behind this car. He observed a woman, later identified as June Chapman, sitting inside the Ford. When Hazel walked up to the Grand Prix, appellant was outside the car with his companion, Danny Jones. Hazel inquired if they had car trouble and appellant responded that they did not, but said he thought the car belonged to a friend.
Hazel observed the radio was missing from the dash of the Grand Prix and there were holes in the rear shelf under the back window where the speakers would be. Either on his way to the Grand Prix or on his way back to his car, to radio for a back-up unit, Hazel flashed his light in the open door of the Ford and saw a car radio on the front floorboard under Chapman's feet. Also there were "pieces of what looked to match the console" of the Grand Prix. He observed a tape deck and a case of tapes in the back seat. When the back-up unit arrived, both cars were searched and appellant, Jones, and Chapman were arrested.
 I
Appellant asserts that the warrantless search of the Ford was illegal and *Page 1344 
violated his Fourth Amendment rights. At the suppression hearing he testified that the Ford belonged to Chapman and, further, claimed no possessory interest in the items seized. Under Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421,58 L.Ed.2d 387 (1978) and McCraney v. State, 381 So.2d 102 (Ala.Cr.App. 1980), appellant had no standing to challenge the search. However, we will discuss this issue because the question is also involved in appellant's second contention.
A search must be conducted pursuant to a warrant issued upon probable cause or fall within one of the six "specifically established and well-delineated exceptions" to the warrant requirement. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507,19 L.Ed.2d 576 (1967). See Daniels v. State, 290 Ala. 316,276 So.2d 441 (1973). The burden is on the State to show that a warrantless search falls within one of the exceptions. Murrayv. State, 396 So.2d 125 (Ala.Cr.App.), cert. denied,396 So.2d 132 (Ala. 1980).
The plain view exception permits a warrantless seizure of evidence if the seizing officer 1) has prior justification for the intrusion, 2) comes upon the evidence inadvertently, and 3) immediately recognizes the objects discovered as evidence of wrongdoing. Coolidge v. New Hampshire, 403 U.S. 443,91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Herrin v. State, 349 So.2d 103
(Ala.Cr.App.), cert. denied, 349 So.2d 110 (Ala. 1977). In our judgment, these three requirements were met.
Hazel testified that he stopped to inquire if his assistance was needed. This justified his presence because one of the functions of a law enforcement officer is to render assistance to motorists. The facts clearly show that the discovery of the evidence was inadvertent. If Hazel first observed that the radio had been removed from the Grand Prix, then the radio in the floorboard of the Ford would have been immediately recognizable as evidence of wrongdoing. If he first observed the radio in the Ford, the situation is analogous to that inYielding v. State, 371 So.2d 951 (Ala.Cr.App.), cert. denied,371 So.2d 962 (Ala. 1979). In Yielding, an officer executing a search warrant inadvertently came upon an item not specifically listed in the search warrant. A computer check revealed this item to be of an incriminating nature and we held it was admissible under the plain view doctrine.
Moreover, the items discovered need not be recognizable beyond a reasonable doubt as incriminating evidence; they need only raise a probability of criminality. Yielding, supra;Herrin v. State, supra. It was not unreasonable for Hazel to infer that some type of criminal activity was afoot when he observed a car radio surrounded by pieces of console matching the color of the Grand Prix.
Appellant's testimony conflicted with Officer Hazel's as to whether the items seized were in plain view. At a suppression hearing conflicting evidence raises a question for the trial judge. He is also to determine the weight and credibility to be attached to the witnesses' testimony. Brumback v. State,371 So.2d 999 (Ala.Cr.App. 1979); Smith v. State, 351 So.2d 668
(Ala.Cr.App.), cert. denied, 351 So.2d 675 (Ala. 1977). We are of the opinion that the evidence presented at the suppression hearing was sufficient to warrant a finding that the items were in plain view.
 II
After being taken into custody, appellant made an incriminating statement which was reduced to writing. According to this statement, appellant, Jones, and Chapman drove from Cullman to Huntsville on the night of August 20. In Huntsville, they each had a beer and a mixed drink. As they were passing through Hartselle on their way back to Cullman, they observed the Grand Prix parked on the side of the road. Appellant was driving Chapman's car and he pulled in behind the Grand Prix. Jones opened the door of the Grand Prix with a tire tool and loosened the radio from the dash. Appellant removed the radio and Jones placed it in Chapman's Ford. Jones *Page 1345 
also placed the tape box in the Ford. Jones and appellant began to remove the speakers from the Grand Prix. Before they could leave, the police arrived and they were arrested.
Appellant contends that this statement was not voluntary and advances two arguments in support. First, he argues that the statement was the product of an illegal search. Since we have determined that the search was legal, this argument is not well taken.
Appellant also argues that he was without the medication that he normally took for epilepsy and, as a result, was suffering from withdrawal at the time he made the statement. He asserts that the withdrawal side effects rendered him incapable of knowingly and intelligently waiving his rights against self-incrimination.
The voluntariness of a confession or incriminating statement is to be determined by the trial court from evidence presented at a hearing outside the presence of the jury. Jackson v.Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The judge may hear evidence from both the prosecution and the defense, Stewart v. State, 49 Ala. App. 681, 275 So.2d 360
(1973), and is to make his determination upon a consideration of the "totality of the circumstances," Blackburn v. Alabama,361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). Even when the evidence presented is in conflict, his finding will not be disturbed on appeal unless it is palpably contrary to the weight of the evidence or is manifestly wrong. Hewitt v. State,389 So.2d 157 (Ala.Cr.App. 1980); Kuczenska v. State,378 So.2d 1182 (Ala.Cr.App. 1979), cert. denied, 378 So.2d 1186
(Ala. 1980).
Statements made while under the influence of alcohol are not rendered involuntary by intoxication "short of mania or such an impairment of the will and mind as to make the person confessing unconscious of the meaning of his words." Stewart v.State, supra; Anderson v. State, 45 Ala. App. 653,235 So.2d 902, cert. denied, 285 Ala. 756, 235 So.2d 906 (1969). This same standard has been applied to statements made while under the influence of sedatives. Willis v. State, 342 So.2d 802
(Ala.Cr.App. 1976), cert. denied, 342 So.2d 806 (Ala. 1977);Vinzant v. State, 28 Ala. App. 220, 180 So. 736 (1938). In our judgment, this principle is also applicable to this case.
Appellant, his mother, and his fiancee testified at the hearing that at the time of his arrest appellant was taking prescribed medication for epilepsy and that when he missed this medication after taking it regularly, he became irritable, had memory lapses, and suffered a loss of "will power and resistance to pressure." According to appellant, he had missed doses of the medication at the time he gave the statement. Further, he had been completely off the medication since his arrest and, while in jail awaiting trial, he had been taken to the local hospital for a "black-out," but had been refused a prescription by the examining physician.
Detective Vernon Bowers of the Hartselle Police Department obtained the statement. He testified that he read appellant theMiranda warnings prior to questioning him. According to Bowers, appellant read the warnings and indicated that he understood them before signing the waiver. Further, he learned that appellant had attended school through the eleventh grade and held a G.E.D. certificate. Bowers stated that no threats, promises, or offers of reward were made to appellant in order to induce him to make a statement, nor did anyone tell appellant that it would be better or worse for him if he made a statement. It was Bowers' testimony that appellant appeared to be rational and to understand what he was doing. Further, appellant did not appear to be under the influence of intoxicants or to be suffering from an emotional or physical problem. Bowers was not informed that appellant needed medication or that he was suffering from the effects of withdrawal. Prior to signing the statement, appellant read it and made a correction which he initialed. According to Bowers, his interview with appellant began at approximately 1:30 P.M. on August 21, *Page 1346 
and continued for an hour to an hour and fifteen minutes.
Based on the evidence presented, the trial court could conclude that appellant was not suffering from such an impairment of will and mind as to render him unconscious of the meaning of his words. The admission of appellant's statement was proper.
 III
Appellant maintains that the admission of certain photographs was error.
State's Exhibit 1 through 9 were photographs showing the damage to Wright's Grand Prix or items from her car. Wright examined each photograph and identified what area of her car or what item was portrayed. State's Exhibit 12 was a photograph of a tire tool lying on the back floorboard of Chapman's Ford. Bowers testified that he took all the photographs and that they clearly and accurately represented the items shown.
Photographs are admissible if they "tend to prove or disprove some disputed or material issue, or to illustrate or elucidate some other relevant fact, or to corroborate or disprove some other evidence offered or to be offered." Farris v. State,57 Ala. App. 390, 328 So.2d 640 (1976). The admission of these photographs was within the sound discretion of the trial court,Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973); Thorntonv. State, 369 So.2d 63 (Ala.Cr.App. 1979), and no abuse of discretion was shown.
For the reasons stated, the judgment of the Morgan Circuit Court is hereby affirmed.
AFFIRMED.
All the Judges concur.