ON REHEARING
The original opinion in this case, dated May 14, 1985, is withdrawn, and the following is substituted in its place.
Douglas Eugene Fields was indicted in two separate indictments by the Mobile County Grand Jury at its September 1982 session for vehicular homicide in violation of § 32-5A-192, Code of Alabama 1975. In one indictment, he was charged with unlawfully causing the death of William Clark McKee while engaged in the violation of a state law applying to the operation of a vehicle, and in the other indictment he was similarly charged with unlawfully causing the death of Rebecca Jean Williamson while engaged in the violation of a state law applying to the operation of a vehicle. The acts alleged in both indictments arose out of a single incident, an automobile collision involving two vehicles, which occurred *Page 479 
on December 4, 1981. At the time of the collision, Williamson was a passenger in the automobile driven by appellant, and McKee was the driver and lone occupant of the other vehicle. The indictments were consolidated for trial and Fields was found guilty as charged in both indictments by a jury on April 5, 1984. On May 15, 1984, Fields was sentenced to serve three years in the penitentiary in each case, and it was ordered that the sentences run concurrently. This appeal followed.
The tendency of the State's evidence was that appellant was driving at a speed in excess of what would have been reasonable under the circumstances at the time of the collision, that he veered suddenly into the left lane of the highway into the path of an oncoming vehicle driven by victim McKee; that the point of impact of the vehicles was in McKee's lane, and that appellant was under the influence of alcohol at the time. No issue is presented on appeal as to the sufficiency of the evidence to support the verdict.
 I A.
First, appellant contends that the trial court committed reversible error in denying his motion to dismiss the indictments. He argues that the indictments were defective because they failed to give him sufficient information to determine exactly what the charges were against him. He bases this argument on the fact that the indictments did not inform him of the specific intoxicant he allegedly had ingested prior to the accident. He relies on Smith v. State, 435 So.2d 158 (Ala.Cr.App. 1983).
An indictment must contain all the elements of the offense charged, and also must sufficiently apprise a defendant of what he must be prepared to meet. Hardy v. State, 409 So.2d 996
(Ala.Cr.App. 1982).
Omitting the formal parts, the indictments are as follows:
 "The GRAND JURY of said County charge, that, before the finding of this indictment
"DOUGLAS EUGENE FIELDS . . .,
 "did unlawfully and unintentionally cause the death of William Clark McKee while engaged in the violation of a state law applying to the operation or use of a vehicle, to-wit: while the said Douglas Eugene Fields was driving while intoxicated or in a reckless manner, and such violation or violations were the proximate cause of the death of William Clark McKee, in violation of § 32-5A-192 of the Code of Alabama. . . ."
and
 "The GRAND JURY of said County charge, that, before the finding of this indictment
"DOUGLAS EUGENE FIELDS . . .
 "did unlawfully and unintentionally cause the death of Rebecca Jean Williamson while engaged in the violation of a state law applying to the operation or use of a vehicle, to-wit: while the said Douglas Eugene Fields was driving while intoxicated or in a reckless manner, and such violation or violations were the proximate cause of the death of Rebecca Jean Williamson, in violation of § 32-5A-192 of the Code of Alabama. . . ."
Section 32-5A-192 (a), provides as follows:
 "(a) Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic shall be guilty of homicide when such violation is the proximate cause of said death."
The statute requires the State to allege and prove, inter alia, that the defendant "while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic" caused the death of someone, and that the violation of such law or ordinance was the proximate cause of said death. The issue here is the specificity required in alleging the violation of the state law applying to the operation or use of the vehicle. An indictment which merely tracked the statutory language would be insufficient because the appellant would *Page 480 
not know which violation of the numerous state laws or municipal ordinances applying to the operation of a vehicle was the proximate cause of the death. Had the indictments in the instant case merely tracked the language of the statute and recited the code section (§ 32-5A-192 (a)), Smith v. State, supra, would be analogous; however, Smith is distinguishable from the case at bar. In Smith, the intoxicant was an element of the offense, and failure to aver it rendered the information void. Here, the intoxicant is not an element of the offense of vehicular homicide.
The indictments in the instant case sufficiently aver the statutes violated, i.e., driving while intoxicated or, in the alternative, reckless driving. They adequately inform appellant of which state laws or municipal ordinances applying to the operation of a vehicle he is being accused of violating. In our opinion, it was not necessary here to allege the intoxicant involved, and the failure to do so did not mislead appellant or hamper his ability to defend himself. It is noted that during the hearing on the motion to dismiss the indictments, the prosecuting attorney informed appellant that the State would attempt to show that he was intoxicated on alcohol at the time of the collision.
We find that the indictments in the instant case were proper in form and substance, being sufficient in and of themselves to fully apprise appellant of the crimes for which he was charged, as well as with what he must have been prepared to defend against.
 B.
After submission of the instant case on appeal, this court in another case held the homicide by vehicle statute unconstitutional on the ground that, by its punishment provisions, it made the offense both a misdemeanor and a felony.Whirley v. State, 481 So.2d 1151 (Ala.Cr.App. 1985), cert.quashed, 481 So.2d 1154 (Ala. 1986). After release of the opinion in Whirley, appellant herein filed a supplemental letter brief with this court claiming that our decision in Whirley was dispositive of the instant case. The record in the instant case discloses that this issue questioning the constitutionality of the statute was raised in the lower court and is now properly before us for review.
The homicide by vehicle statute[1] applicable in the instant case was enacted in 1980, and it provides, in pertinent part, as follows:
 "(b) Any person convicted of homicide by vehicle shall be fined not less than five hundred dollars ($500) nor more than two thousand dollars ($2,000), or shall be imprisoned in the county jail not less than three months nor more than one year, or may be so fined and so imprisoned, or shall be imprisoned in the penitentiary for a term not less than one year nor more than five years."
1980 Ala. Acts 604, No. 434, § 9-107 (1980).
After release of our opinion in Whirley on January 8, 1985, the State petitioned the Supreme Court of Alabama for a writ of certiorari. We delayed deciding the instant case, pending the outcome in Whirley. The Supreme Court denied the petition for writ of certiorari in Whirley on April 26, 1985, and we released our opinion referred to above in the instant case on May 14, 1985, holding the homicide by vehicle statute unconstitutional on the basis of our reasoning in Whirley. On June 4, 1985, the Supreme Court set aside its order of April 26, 1985, denying certiorari in Whirley; placed the petition on rehearing ex mero motu; and granted the writ of certiorari. On June 6, 1985, we ordered the instant case placed on rehearing ex mero motu on authority of the order of the Supreme Court of June 4, 1985, inWhirley. *Page 481 
On January 10, 1986, the Supreme Court quashed the writ of certiorari in Whirley as having been improvidently granted, and did not address the issue concerning the constitutionality of the statute, due to a procedural error committed by the State.Whirley v. State, 481 So.2d 1154 (Ala. 1986).
On November 12, 1985, in Newberry v. State, 493 So.2d 993
(Ala.Cr.App. 1985), we again held the homicide by vehicle statute unconstitutional because it authorizes both misdemeanor and felony punishments for the same offense. In so holding we relied upon Whirley and our opinion of May 14, 1985, in the instant case. The Supreme Court of Alabama granted certiorari in Newberry
and reversed this court's judgment on April 18, 1986, holding that the homicide by vehicle statute is not unconstitutional because it authorizes both misdemeanor and felony punishments for the same offense. The Supreme Court held that the statute does not violate the guarantees of Article 1, Section 6, of the Alabama Constitution, because, from a reading of the statute, a defendant could be reasonably apprised of the accusation against him or her and the possible penal consequences. State v.Newberry, 493 So.2d 995 (Ala. 1986).
Thus, the decision of the Supreme Court in Newberry is dispositive of this issue in the case at bar. The statute is not unconstitutional because it provides both possible misdemeanor and felony punishment for the same offense.
 II
Appellant contends that the trial judge improperly commented on the evidence, and thereby committed reversible error. Upon completion of the oral charge to the jury, and before the jury retired, the trial judge asked if any juror had a question or did not understand the instructions. Then the following occurred:
 "JUROR: Should we consider what happened to Mr. McKee between the time that he was hit, the time he was admitted to the hospital and the events that followed in the hospital? Should we consider that in his death, what occurred in the hospital as being . . .?
"THE COURT: No.
"JUROR: You see what I'm saying?
 "THE COURT: No. Insofar as this case is concerned, Mr. McKee died from the injuries which he sustained in this accident and that should not — That is a very good question and I'm glad you brought that to my attention. It has been raised by the parties and that is the ruling of the Court and it's based on established principles of law and you must consider that that would be the law. But that is a very good question and I am glad you brought that up.
". . . .
 "MR. KIMBROUGH: [Defense counsel. Out of presence of jury, but before jury retired to deliberate.] I except to the response of the Court to the . . . question asked by the juror relative to the incidents in the hospital. The matter raised constitutes a question as to the facts that have been testified to and the Court's response constitutes a comment on the facts in this case as opposed to any matter of law. I would except to that."
Appellant argues that the comments of the trial judge were highly prejudicial and invaded the province of the jury. He contends that the trial court decided the issue of proximate cause for the jury. We disagree.
Appellant's objection and the court's ruling thereon properly preserved the issue for review. Of course, the court's response to the juror's question constituted and must be considered as a portion of the court's oral instructions. Portions of a charge excepted to should be construed in connection with the whole charge of the court. Nixon v. State, 268 Ala. 101, 105 So.2d 349
(1958); McCovery v. State, 365 So.2d 358 (Ala.Cr.App. 1978). In the main charge, the trial court correctly instructed the jury as to their function as factfinders, as follows: *Page 482 
 "It is your duty as jurors to find the facts. To take the law as I give it to you now and apply that law to the facts as you find them to be from the evidence in the case.
 "You are the sole and the exclusive judges of the facts. And, I believe I told you earlier that the statements made by the attorneys in the case are not evidence. Therefore, if your recollection of the testimony should differ with that in any statement made by any attorney, you should disregard the attorney's statement and accept and be guided by your collective recollection of the facts because you are the judges of the facts.
 "In that connection the Court expresses no opinion on the facts. Therefore, if at any time in the course of the trial I may have done or said anything or made any ruling which might have suggested to you that I had an opinion, it was not intended and you should disregard it because you are the sole and the only judges of the facts."
The comment of the trial judge in answering the juror's question, which, of course, was addressed to the entire jury, must be considered along with the general admonition set out above as well as with the entire oral charge.
The record reveals that the only testimony concerning events at the hospital which might remotely suggest an intervening cause of death or even a risk to McKee was a medical doctor's testimony that one of the X-rays taken involved "some slight risk" to the patient due to the patient's severe injury, and therefore was not routinely done. However, there is absolutely no evidence from which even an inference could be drawn that the X-ray adversely affected McKee in any way. Appellant's counsel was allowed to ask the doctor on cross-examination about a pending civil suit, apparently for wrongful death, in which the doctor and the hospital are accused of not having properly treated the victim, McKee. No attempt was made to prove that any intervening or superseding event occurred which may have broken or interrupted the natural and continuous sequence of events leading from the violation of the law applying to the operation of the vehicle to the death of McKee. There is no evidence in the record to support an inference that anything occurred from the moment McKee was injured in the collision until he died at the hospital that would have constituted an intervening or contributory cause of death or broken the chain of causation.
In 1 Wharton's Criminal Law § 26 (C. Torcia 14th ed. 1978), the general rule concerning causation in criminal cases is stated as follows:
 "Analytically, the statute defining an offense may prohibit and punish: (1) specified conduct; (2) a specified result that is caused by conduct; or (3) conduct that is attended by a specified circumstance.
 "Where the statute involves a specified result that is caused by conduct, it must be shown, as a minimal requirement, that the accused's conduct was an antecedent `but for' which the result in question would not have occurred. This means that an accused's conduct must at least be a physical cause of the harmful result. But mere physical causation is not always enough; a particular physical cause is enough only when it is a cause of which the law will take cognizance. This idea has been implemented by requiring that the harmful result in question be the natural and probable consequence of the accused's conduct; if the physical causation is too remote, the law will not take cognizance of it. The same result has been achieved by requiring that the accused's conduct be a substantial factor in causing the harmful result or that it be the proximate, primary, efficient, or legal cause of such harmful result.
 "Where conduct on the part of a third person or the victim, or where a condition, intervenes in causing the harmful result, the accused's conduct may still be regarded as the cause if the intervening conduct or condition was merely a contributing cause. If the intervening conduct *Page 483 
or condition was an independent cause of the harmful result or if it substantially accelerated the result, such conduct or condition will be regarded as superseding and insulating the accused's conduct as the cause."
In discussing the issue of causation in reference to the treatment of a wound by a physician, the Alabama Supreme Court in Parsons v. State, 21 Ala. 300 (1852), stated:
 "We all agree that, ordinarily, if a wound is inflicted not dangerous in itself, and the death was evidently occasioned by grossly erroneous treatment, the original author will not be accountable. . . . And we agree, also, that if the wound was mortal or dangerous, the person who inflicted it cannot shelter himself under the plea of erroneous treatment." 21 Ala. at 301.
See also Thomas v. State, 139 Ala. 80, 36 So. 734 (1903).
In the instant case, the collision occurred around midnight. Ms. Williamson was apparently killed instantly. McKee was transported shortly thereafter to a hospital, where he was treated by a medical doctor and members of the hospital staff in the emergency room, and given intensive care and continuously observed. As a result of X-rays and tests, it was discovered around 6:00 a.m. that McKee had a torn main blood vessel in the heart area which was dangerous and subject to rupture. A decision was made to operate, but while he was being prepared for the operation, the blood vessel ruptured and he bled to death. It appears that he died around 7:00 a.m. No evidence was offered showing negligence on the part of the medical doctor or hospital staff or that the treatment was improper in any way. The record contains only a bare assertion that a civil suit is pending against the doctor and hospital. The general rule is that the pendency of a civil action or the previous disposition thereof has no effect on a criminal prosecution. McMickens v. State, 18 Ala. App. 36, 88 So. 342
(1921).
 "The court does not invade the province of the jury in a criminal prosecution by stating that there is or is not evidence of particular facts when such is the case. Seibold v. State, 287 Ala. 549, 253 So.2d 302
(1970). . . ."
Yarber v. State, 437 So.2d 1319, 1326 (Ala.Cr.App. 1981), rev'd on other grounds, 437 So.2d 1330 (Ala. 1983). See also Townsellv. State, 255 Ala. 495, 52 So.2d 186 (1951); Goff v. Sellers,215 Ala. 489, 111 So. 210 (1927); 75 Am.Jur.2d Trial § 670 (1974).
The trial court's comment in answer to the juror's question, "Insofar as this case is concerned, Mr. McKee died from the injuries which he sustained in this accident," in essence is a statement that the evidence shows that McKee died as a result of the injuries received in the collision and that there was no evidence to the contrary for the jury to consider. It was a comment on the evidence, but it was made in reference to facts which were undisputed. Since there was no evidence of a contributory or intervening cause of the harmful result, the trial court's comment was not prejudicial to appellant and did not invade the jury's factfinding function. Seibold v. State,287 Ala. 549, 253 So.2d 302 (1970). The instruction in this instance cannot be said to have been a comment on the evidence in a forbidden sense. It must be borne in mind that the facts pertaining to McKee's injuries and the fact that they were sustained in the collision were not contradicted in any essential particular, and the only evidence of such was that given by the State's witnesses. These facts were not contradicted or even minimized by the testimony offered by appellant, and the rule forbidding instructions containing a comment on the evidence does not apply here.
The trial judge did not decide the issue of proximate cause or comment thereon, as the appellant contends he did. The court did not comment on the conduct of appellant, but only on the undisputed evidence of the victim's injuries which caused his death and the fact that they were caused by the collision. The element of proximate cause, which had to be found by the jury in order to convict, was that the violation of the State laws, those regarding reckless driving *Page 484 
and/or driving under the influence of alcohol, was the proximate cause of the deaths. The trial court properly instructed the jury on the element of probable cause: It stated:
 "The Defendant is charged under a statute which is known as the Vehicular Homicide Statute. I'll read it to you at this time. The statute says that whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic shall be guilty of homicide when such violation is the proximate cause of said death.
 "Now that phrase proximate cause means this: It means that cause which in the natural and probable sequence of events and without the intervention of any new or independent cause produces the death and without which the death would not have occurred.
". . . .
 "In other words someone may be driving — and I'm not telling you or suggesting these are the facts. That's your decision. Someone may be driving recklessly or under the influence but unless that is the proximate cause of the death they would not be guilty of any offense. . . ."
Remarks by the trial judge may be open to criticism, but they are not error unless they have affected the result of the trial. McCovery v. State, supra. In the instant case, the statement of the trial judge complained of cannot be said to have affected the result of this trial.
 III
Appellant contends that the trial court committed reversible error by refusing to give his requested written jury instructions on the alleged contributory negligence of victim McKee. He argues that evidence was elicited from the witnesses which showed that "McKee may have had the last clear chance to avoid the accident" and that it was prejudicial not to allow him such instructions. We find no merit in this contention.
It is no defense or excuse in a prosecution for crime that the victim was contributorily negligent. Broxton v. State,27 Ala. App. 298, 171 So. 390 (1936); Wharton's § 47, supra. InBroxton v. State, 27 Ala. App. at 300, 171 So. at 392, the Alabama Court of Appeals, in stating the rule, said:
 "The fact that Walden had an equal opportunity of seeing the approach of the automobile and of avoiding the accident is no defense in this case. As was said in the case of Schultz v. Nebraska, 89 Neb. 34, 130 N.W. 972, 975, 33 L.R.A. (N.S.) 403, Ann.Cas. 1912C, 495, `contributory negligence as such is not available as a defense in a criminal prosecution for a homicide caused by the gross and reckless misconduct of the accused, although the decedent's behavior is admissible in evidence, and may have a material bearing upon the question of the defendant's guilt. If, however, the culpable negligence of the accused is found to be the cause of the decedent's death, the former is responsible under the criminal law, whether the decedent's failure to use due care contributed to his injury or not.' The rule concerning contributory negligence is applicable in actions for damages for personal injuries and has no application in criminal cases."
The Court's refusal to give the written requested instructions concerning possible contributory negligence of victim McKee was proper.
 IV
Last, appellant contends that reversible error was committed when the trial court admitted into evidence a statement made by appellant while being treated at the hospital shortly after the collision. Dr. David Wyatt testified that he was a medical student on duty in the emergency ward of the hospital on the night appellant was being examined and treated for injuries received in the automobile collision, and that while questioning appellant in order to *Page 485 
compile a "social history" of the event, he asked appellant if he had used alcohol or drugs on the night of the accident. Appellant responded that he had used alcohol and smoked marijuana on the night of the accident.
Appellant argues that due to the injuries he sustained in the accident, he did not know or comprehend what he was saying, and that the statement therefore was involuntary. He further argues that even if the admission concerning marijuana was admissible, its prejudicial effect outweighed its probative value. Wyatt testified that when appellant came in he was combative, disoriented, smelled heavily of alcohol, had small lacerations on his forehead, appeared to have a fractured clavical, but was not in shock. He further testified that at times appellant was "fairly lucid" and could answer questions "apparently appropriately," and at other times he could not. Wyatt testified as follows:
"Q. Was he out of his head?
"A. At times he was.
 "Q. Do you know when he was and when he wasn't with regard to what you wrote down on that report?
 "A. Yes, sir. I felt like things that I wrote on the report were questions that he responded to appropriately to questions I had asked.
". . . .
 "Q. And is it your testimony what you did record was the result of a person that you felt understood the nature of what he was doing and his responses?
 "A. Well at the time I recorded it, yes, sir, I thought he understood the question I was asking and the answer that he gave was in response to the questions that I asked.
". . . .
 "Q. Okay. It appeared that he understood what you were asking. And what did you ask him and what did you record as to the social history of this event, please?
 "A. I asked him specifically about alcohol and drug abuse the night of the accident.
"Q. All right. And what did he respond, please, sir?
 "A. He responded that he'd been using alcohol and that he had smoked marijuana."
A blood alcohol test conducted shortly after appellant arrived at the hospital disclosed a .104 blood alcohol content. The questions addressed to appellant by Wyatt were logical, necessary, and proper to his examination and treatment for the injuries he had sustained in the collision. However, appellant's statement with reference to the use of alcohol and marijuana constituted an admission against his interest.
 "The voluntariness of a confession or incriminating statement is to be determined by the trial court from the evidence presented at a hearing outside the presence of the jury. Jackson v. Denno, 378 U.S. 368
[84 S.Ct. 1774, 12 L.Ed.2d 908] . . . (1964). The judge may hear evidence from both the prosecution and the defense, Stewart v. State, 49 Ala. App. 681, 275 So.2d 360 (1973), and is to make his determination upon a consideration of the `totality of the circumstances,' Blackburn v. Alabama, 361 U.S. 199
[80 S.Ct. 274, 4 L.Ed.2d 242] . . . (1960). Even when the evidence presented is in conflict, his finding will not be disturbed on appeal unless it is palpably contrary to the weight of the evidence or is manifestly wrong. Hewitt v. State, 389 So.2d 157
(Ala.Cr.App. 1980); Kuczenska v. State, 378 So.2d 1182 (Ala.Cr.App. 1979), cert. denied, 378 So.2d 1186
(Ala. 1980).
 "Statements made while under the influence of alcohol are not rendered involuntary by intoxication `short of mania or such an impairment of the will and mind as to make the person confessing unconscious of the meaning of his words.' Stewart v. State, supra; Anderson v. State, 45 Ala. App. 653, 235 So.2d 902
(1969), cert. denied, 285 Ala. 756, 235 So.2d 906
(1970). This same standard has been applied to statements made while under the influence of sedatives. Willis v. State, 342 So.2d 802
(Ala.Cr.App. 1976), cert. denied, 342 So.2d 806 *Page 486 
(Ala. 1977); Vinzant v. State, 28 Ala. App. 220, 180 So. 736 (1938). . . ."
Myers v. State, 431 So.2d 1342, 1345 (Ala.Cr.App. 1982), cert. quashed, 431 So.2d 1346 (Ala. 1983). See also Tice v. State,386 So.2d 1180 (Ala.Cr.App.), cert. denied, 386 So.2d 1187
(1980). The general rule as to the mental and physical condition of an accused as affecting the admissibility of a confession or admission is stated in 29 Am.Jur. Evidence § 575 (1967), as follows:
 "The admissibility or voluntary character of a confession is not affected by the fact that the accused was not in full possession of his faculties at the time his confession was made, although such circumstance is to be taken into consideration by the jury in weighing the evidence. . . ."
Applying the above principles to the evidence presented in the instant case, we find that the trial court could have reasonably concluded that appellant was not suffering from physical injuries and intoxicants to such an extent that his mind and will were so impaired as to render him unconscious of the meaning of his words. The lower court's ruling is not palpably contrary to the weight of the evidence or manifestly wrong. The condition of appellant at the time he made the admission addresses itself to the weight to be given the statement by the jury and not to its admissibility in this case. The admission of appellant's statement was proper.
Assuming, arguendo, that the admission of the statement was error, it was error without injury, as it was merely cumulative of other strong evidence of appellant's use of alcohol at the time of the collision. His automobile contained a broken whiskey bottle and other evidence of alcohol. He strongly smelled of alcohol about his person. He admitted taking "one" drink shortly before the collision. He admitted that there was alcohol in the automobile. His blood alcohol test taken at approximately 1:30 a.m. at the hospital showed a .104 blood alcohol content. Based upon the medical testimony relating to the absorption of alcohol by the body, it would appear that appellant's blood alcohol content at the time of the accident was higher that .104. The medical testimony adduced at trial was that a person with such a blood alcohol content would be under the influence of alcohol to some extent. In Alabama a person with such a blood alcohol content would be legally presumed to be under the influence of alcohol. Section32-5A-191 (a)(1), Code of Alabama 1975. The trial judge so instructed the jury.
We find that there was sufficient evidence for the jury to find appellant guilty on both charges beyond a reasonable doubt. The evidence supports a finding that appellant unlawfully and unintentionally caused the deaths of William Clark McKee and Rebecca Jean Williamson while engaged in the violation of a state law, either reckless driving (§ 32-5A-190, Code of Alabama 1975) or driving under the influence of alcohol (§ 32-5A-191, Code of Alabama 1975), or both, and that such violation or violations were the proximate cause of the deaths. The judgment of the trial court is due to be, and it is hereby, affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
All Judges concur.
[1] Subsection (b) of the 1980 Act was amended by 1983 Ala. Acts 959, No. 620, § 1 (effective July 29, 1983). The current act is codified at Ala. Code (1975), § 32-5A-192 Subsection (a) of the 1980 and 1983 Acts is identical. Subsection (b) of the 1983 Act reads:
 "(b) Any person convicted of homicide by vehicle shall be fined not less than $500.00 nor more than $2,000.00, or shall be imprisoned for a term not less than one year nor more than five years, or may be so fined and so imprisoned." *Page 584